MICHAEL J. NIBORSKI (State Bar No. 192111)
*mniborski@pryorcashman.com*
BENJAMIN S. AKLEY (State Bar No. 278506)
*bakley@pryorcashman.com*
MARY A. BALZER (State Bar No. 329750)
*mbalzer@pryorcashman.com*
**PRYOR CASHMAN LLP**
1801 Century Park East, 24th Floor
Los Angeles, California 90067
Telephone: (310) 683-6900
Facsimile: (310) 943-3397

*Attorneys for Plaintiff*
SIGNATURE FINANCIAL LLC, d/b/a
SIGNATURE FINANCIAL AND LEASING LLC

**UNITED STATES DISTRICT COURT**

**NORTHER DISTRICT OF CALIFORNIA**

| | |
|---|---|
| SIGNATURE FINANCIAL LLC, d/b/a SIGNATURE FINANCIAL AND LEASING LLC,<br><br>Plaintiff,<br><br>v.<br><br>A LOT TO SAY, INC. and JENNIFER STANICH-BANMILLER,<br><br>Defendants. | Case No.<br><br>**COMPLAINT** |

Plaintiff Signature Financial LLC, d/b/a Signature Financial and Leasing LLC ("Signature" or "Plaintiff"), by and through its attorneys, complaining of defendants, A Lot to Say, Inc. ("A Lot to Say" or "Borrower"), and Jennifer Stanich-Banmiller ("Stanich-Banmiller", and together with A Lot to Say, collectively, the "Defendants"), and for causes of action would respectfully assert as follows:

## THE PARTIES

1. Signature is a New York limited liability company maintaining an office for the transaction of business in Melville, New York. The sole member of Signature is Signature Bank, which is a New York State chartered bank, organized under the laws of New York, with its principal place of business in New York. Therefore, since Signature Bank is a citizen of the State of New York, Signature is not a citizen of the State of California for diversity jurisdiction purposes.

2. Upon information and belief, A Lot to Say is a corporation organized and existing under the laws of the State of California, with its principal place of business located at 4155 Blackhawk Plaza Circle, Suite 110, Danville, CA 94506, and is therefore deemed to be a citizen of the State of California for diversity jurisdiction purposes.

3. Upon information and belief, Stanich-Banmiller is an individual who is a citizen of the State of California and whose principal residence is located within the Northern District of California and located at 4478 Deer Ridge Road, Danville, CA 94506, and is therefore deemed to be a citizen of the State of California for diversity jurisdiction purposes.

## JURISDICTION

4. This Court has jurisdiction over this lawsuit pursuant to 28 U.S.C. § 1332(a)(1) because the amount in controversy is in excess of $75,000, exclusive of interest and costs, and the Plaintiff and Defendants are citizens of different states.

## VENUE AND INTRADISTRICT ASSIGNMENT

5. Venue is proper in the Northern District of California pursuant to 28 U.S.C. § 1391(b)(1) because it is the judicial district in which all Defendants reside. The defendants reside and the events giving rise to this action arose within the County of Contra Costa, California.

**FACTS**

6. On or about May 18, 2016, A Lot to Say and Liberty Capital Group, Inc., d/b/a NJ Liberty Capital Group ("Liberty"), entered into, inter alia, a Chattel Mortgage (Equipment Financing Agreement L-16129) (as at any time amended, the "Agreement"), whereby the Borrower agreed to pay Liberty the principal sum of $353,250.00, plus interest, over a period of sixty-three (63) consecutive months. (A true and correct copy of the Agreement is attached hereto as **Exhibit "1"** and the terms and conditions thereof are incorporated herein by reference.)

7. Pursuant to the Agreement, A Lot to Say agreed to make three (3) consecutive monthly installments in the amount of $500.00 to Liberty, followed by sixty (60) consecutive monthly installments in the amount of $6,839.00, with an advance payment in the amount of $7,339.00 to be applied to the last payment under the Agreement. The commencement date of the Agreement was September 30, 2016.

8. In order to secure the obligations of A Lot to Say to Liberty under the Agreement and all other present and future indebtedness of A Lot to Say to Liberty, the Borrower granted to Liberty a security interest in and to, inter alia, one (1) EFI Vutek GS3250LX Proprinter with Ultradrop Technology, complete with all standard and accessory equipment (collectively, the "Collateral"), subject to and more particularly described in Agreement.

9. On or about May 18, 2016, and in order to induce Liberty to enter into the Agreement, and for other good and valuable consideration, Stanich-Banmiller executed that certain Personal Guaranty (as at any time amended, the "Guaranty"), pursuant to which Stanich-Banmiller unconditionally guaranteed to Liberty, the prompt payment and performance of the Obligations (as that term is defined below) due under the Agreement. (A true and correct copy of the Guaranty is attached hereto as **Exhibit "2"** and the terms and conditions thereof are incorporated herein by reference.)

10. Liberty assigned all of its right, title, and interest in and to the Agreement, the Collateral, and the Guaranty to Signature. (A true and correct copy of the Notice of Acknowledgement of Assignment of the Agreement, the Collateral, and the Guaranty executed by

Stanich-Banmiller is attached hereto as **Exhibit "3"** and the terms and conditions thereof are incorporated herein by reference.)

11. As a result of the foregoing assignment, Signature became the successor-in-interest to Liberty with respect to the Agreement, the Collateral, and the Guaranty.

12. On or about August 26, 2016, A Lot to Say accepted delivery of the Collateral and thereafter commenced making payments to Signature under the terms and conditions of the Agreement. (A true and correct copy of the Delivery and Acceptance Certificate with respect to the Collateral is attached hereto as **Exhibit "4"** and the terms and conditions thereof are incorporated herein by reference.)

13. Liberty duly perfected its security interest in the Collateral by filing a UCC-1 Financing Statement with the Secretary of State of the State of California (the "UCC-1"). The UCC-1 was subsequently amended to reflect Signature as the secured party with a lien in and to the Collateral (the "Amended UCC-1"). (True and correct copies of the UCC-1 and Amended UCC-1 with respect to the Collateral are attached hereto as **Exhibit "5"** and are incorporated herein by reference.)

**FIRST COUNT – BREACH OF CONTRACT**

**(AGAINST A LOT TO SAY)**

14. Signature repeats and realleges the foregoing allegations of this Complaint as if fully set forth herein.

15. The Agreement provides, inter alia, that A Lot to Say was to make each monthly installment payment as it came due, and that the Borrower shall be in default in the event of any failure to make any payment when due under the Agreement.

16. The Agreement also provides, inter alia, that A Lot to Say would not assign, pledge, mortgage, or otherwise transfer its rights under the Agreement or in the Collateral or permit the Collateral to be used by anyone other than the Borrower.

17. The Agreement further provides that the Borrower shall be in default of the Agreement by reason of its failure to observe or perform any other agreement or obligation to be observed or performed under the Agreement.

18. The Agreement provides further, inter alia, that upon the occurrence of an event of default, the entire unpaid balance of principal and accrued interest shall, at the option of Signature, become immediately due and payable.

19. A Lot to Say breached and defaulted upon the Agreement when it failed to make the required monthly payment due to Signature for the month of July 2020 and all months thereafter (the "Default").

20. Upon information and belief, the Borrower also breached and defaulted upon the Agreement when it assigned the Agreement and/or the right to use the Collateral to a third party without Signature's consent or authorization.

21. Thereafter, and in accordance with the terms of the Agreement, the entire balance of all unpaid monies due under the terms of the Agreement was declared to be immediately due and payable to Signature (collectively, the "Obligations").

22. As of December 7, 2020, the total of the Obligations was in an amount not less than $114,830.28, plus interest from and after December 7, 2020, attorneys' fees, costs and any other amounts, including applicable taxes, due under the terms of the Agreement.

23. Signature has performed all terms and conditions precedent on its part, to the extent that there are any, to be performed pursuant to the Agreement.

24. Despite the foregoing and demand for payment of the Obligations by Signature, A Lot to Say has failed to pay any of the Obligations to Signature.

25. By reason of the foregoing, A Lot to Say breached and defaulted under the terms of the Agreement.

26. The Agreement provides that in the event of a default thereunder, A Lot to Say is liable for all costs, attorneys' fees, and expenses incurred by Signature as a result of the default.

27. As a result of the Default, Signature has incurred attorneys' fees, expenses, and court costs and will continue to incur further legal fees and expenses in the enforcement of its rights and remedies. Accordingly, Signature seeks an award for attorneys' fees, expenses, and costs against A Lot to Say for the prosecution of this action.

28. As of December 7, 2020, A Lot to Say was liable to Signature in an amount not less than $114,830.28, plus interest from and after December 7, 2020, attorneys' fees, costs and any other amounts, including applicable taxes, due under the terms of the Agreement.

**WHEREFORE**, by reason of the foregoing, Signature demands judgment in its favor and against A Lot to Say in the amount of $114,830.28, plus interest from and after December 7, 2020, attorneys' fees, costs and any other amounts, including applicable taxes, due under the terms of the Agreement.

## SECOND COUNT – BREACH OF CONTRACT

## (AGAINST STANICH-BANMILLER)

29. Signature repeats and realleges the foregoing allegations of this Complaint as if fully set forth herein.

30. By reason of the Default and A Lot to Say's failure to pay the Obligations to Signature, Signature has suffered damages in an amount not less than, $114,830.28, plus interest from and after December 7, 2020, attorneys' fees, costs and any other amounts, including applicable taxes, due under the terms of the Agreement, all of which continue to accrue.

31. Signature has made demand on Stanich-Banmiller for payment of the Obligations of A Lot to Say to Signature arising under the Agreement.

32. Despite the Default and demand for payment of the Obligations by Signature, Stanich-Banmiller has failed to pay any of the Obligations to Signature.

33. By reason of the foregoing, Stanich-Banmiller breached and defaulted under the terms of the Guaranty.

34. Signature has performed all terms and conditions precedent on its part, to the extent that there are any, to be performed pursuant to the Guaranty.

35. By reason of the terms of the Guaranty, Stanich-Banmiller is also liable to Signature for all attorneys' fees, expenses, and costs incurred by Signature as a result of A Lot to Say's Default.

36. As of December 7, 2020, Stanich-Banmiller was liable to Signature in an amount not less than $114,830.28, plus interest from and after December 7, 2020, attorneys' fees, costs and any other amounts, including applicable taxes, due under the terms of the Agreement and Guaranty.

**WHEREFORE**, by reason of the foregoing, Signature demands judgment in its favor and against Stanich-Banmiller in the amount of $114,830.28, plus interest from and after December 7, 2020, attorneys' fees, costs and any other amounts, including applicable taxes, due under the terms of the Agreement and Guaranty.

## THIRD COUNT - REPLEVIN

## (AGAINST A LOT TO SAY)

37. Signature repeats and realleges the foregoing allegations of this Complaint as if fully set forth herein.

38. Pursuant to the terms of the Agreement, A Lot to Say granted to Signature a security interest in and to the Collateral.

39. In accordance with the terms of the Agreement, upon the event of a default by A Lot to Say under the Agreement, Signature is entitled to take possession of the Collateral.

40. As a result of A Lot to Say's failure to make payment of the required monthly installments to Signature under the Agreement, A Lot to Say has defaulted under the Agreement.

41. Upon information and belief, the Borrower also defaulted under the Agreement by reason of its assignment of the Agreement and/or the right to use the Collateral to a third party without Signature's consent or authorization.

42. As such, by reason of the Default, Signature is entitled to take possession of the Collateral.

43. Upon information and belief, A Lot to Say or a third party that was assigned possession and/or the right to use the Collateral by the Borrower without Signature's consent or authorization is currently in possession and control of the Collateral.

44. Upon information and belief, the Collateral is located at 4155 Blackhawk Plaza Circle, Suite 110, Danville, CA 94506.

45. Demand is hereby made by Signature for the immediate possession of the Collateral.

46. Due to the Default, Signature's right to possession of the Collateral is superior to any right A Lot to Say or any other third party may have in the Collateral and the continued detention of the Collateral by the Borrower or the third party assigned possession of the Collateral by A Lot to Say without Signature's consent is wrongful.

47. Upon information and belief, the Collateral has not been taken for any tax, assessment or fine levied by virtue of any laws of the State of California against the property of Signature, nor seized under any lawful process against the goods and chattels of Signature subject to such lawful process, nor held by virtue of any order for replevin, execution or attachment against Signature.

48. Upon information and belief, A Lot to Say is refusing to surrender the Collateral to Signature in order to avoid repossession by Signature and in order that the Borrower continue to profit from its use.

**WHEREFORE**, by reason of the foregoing, Signature respectfully requests that this Court enter a judgment of possession awarding Signature the right to replevin and to take immediate possession of the Collateral wherever it may be located.

## PRAYER FOR RELIEF

WHEREFORE, Signature prays for the following relief:

a. For general damages in an amount to be proven at trial but which exceeds the jurisdictional limits of this Court;

b. For a judgment in its favor and against A Lot to Say in the amount of $114,830.28, plus interest from and after December 7, 2020, attorneys' fees, costs and any other amounts, including applicable taxes, due under the terms of the Agreement;

c. For a judgment in its favor and against Stanich-Banmiller in the amount of $114,830.28, plus interest from and after December 7, 2020, attorneys' fees, costs and any other amounts, including applicable taxes, due under the terms of the Agreement and Guaranty;

d. For a judgment of possession awarding Signature the right to replevin and to take immediate possession of the Collateral wherever it may be located;

e. For attorney's fees and costs; and

f. For all costs of suit herein incurred.

Dated: February 19, 2021

**PRYOR CASHMAN LLP**

By: */s/ Michael J. Niborski*
Michael J. Niborski
*mniborski@pryorcashman.com*

*Attorneys for Plaintiff*
SIGNATURE FINANCIAL LLC, d/b/a SIGNATURE FINANCIAL AND LEASING LLC

# EXHIBIT 1

CHATTEL MORTGAGE

Equipment Financing Agreement)
L-16129

CREDITOR: Liberty Capital Group, Inc. which will do business in California as NJ Liberty Capital Group
45 Carey Avenue, Suite 200
Butler, NJ 07405

OBLIGOR: A LOT TO SAY, INC.
4155 Blackhawk Plaza Circle, Suite 110
Danville, CA 94506

SELLER: EFI
6750 Dumbarton Circle
Freemont, CA 94555

---

EQUIPMENT/QUANTITY: One (1) EFI Vutek GS3250LX Proprinter with Ultradrop Technology, serial number_________, complete with all standard and accessory equipment.

Total: $353,250.00

---

ADDITIONAL PROVISIONS (IF ANY) AND/OR LOCATION OF EQUIPMENT OTHER THAN OBLIGOR'S ADDRESS ABOVE:

TERMS AND CONDITIONS OF AGREEMENT

| A. MONTHLY PAYMENTS: | B. TERM OF AGREEMENT: | C. COMMENCEMENT DATE: | D. ADVANCE PAYMENTS : | E. ADVANCE PAYMENT SHALL BE APPLIED TO THE LAST PAYMENT: |
|---|---|---|---|---|
| 1-3 @ $500.00<br>4-63 @ $6,839.00 | 63 months | 9-30-16 | 1 @ $500.00<br>1 @ $6,839.00 | $7,339.00 |

AMOUNT OF ADVANCE: $353,250.00

1. The obligor named above ("Obligor") hereby grants to the creditor named above ("Creditor") a first priority security interest in the personal property described above and in any schedule signed by the parties and made a part hereof, including all proceeds and products thereof, all proceeds of insurance thereon, all substitutions therefor and all additions thereto (said property, proceeds, products substitutions and additions being herein called "Equipment"), which Equipment Obligor confirms will be used solely for commercial or business purposes (and not for consumer, personal, family or household purposes), as security for the repayment by Obligor to Creditor of the amounts specified in paragraph 4 hereof (and including any amounts specified in any separate promissory note or instrument which may be executed by Obligor specifically relating to this Agreement) and the performance by Obligor of all of its other obligations pursuant to the terms and conditions of this Agreement.

2. Creditor agrees to advance to or on behalf of Obligor the above-stated Amount of Advance (herein called the "Advance") which Obligor agrees may be paid directly by Creditor to Seller in satisfaction of the total purchase price of the Equipment.

3. The term of this Agreement (the "Entire Term") shall be the number of months stated in B above, commencing on the date stated in C above. Obligor authorizes Creditor to insert such commencement date herein, provided that such date shall not be earlier than the date of delivery to Obligor of all or a substantial part of the Equipment.

4. Obligor's total payments for the Entire Term of this Agreement is equal to the monthly payment stated in A above, multiplied by the number of months stated in B above. Obligor agrees to pay the total payment in monthly installments, in advance, each in the amount stated in A above, commencing on the date stated in C above and continuing on the same day of each month thereafter. The "Advance Payments" stated in D above shall be paid by Obligor prior to Creditor's acceptance of this Agreement, and shall be applied to the periodic installments stated in E above. In the event the term of this Agreement does not commence for any reason whatsoever, the Advance Payments stated in D above shall be retained by Creditor not as a penalty but as liquidated damages to cover Creditor's administrative expenses in processing the application for this Agreement. Payment of all periodic installments and other amounts payable hereunder shall be

INITIAL

made to Creditor at its above stated address, or as it shall otherwise designate in writing. **THIS AGREEMENT IS IRREVOCABLE AND MAY NOT BE CANCELED, TERMINATED OR REVOKED BY OBLIGOR DURING THE TERM HEREOF FOR ANY REASON WHATSOEVER.**

5. **OBLIGOR REPRESENTS THAT IT HAS SELECTED THE EQUIPMENT, AND OBLIGOR AGREES THAT CREDITOR HAS NOT MADE AND MAKES NO REPRESENTATIONS OR WARRANTIES OF ANY KIND OR NATURE, DIRECTLY OR INDIRECTLY, EXPRESS OR IMPLIED, AS TO ANY MATTER WHATSOEVER, INCLUDING, WITHOUT LIMITATION, TITLE TO OR THE SUITABILITY OF THE EQUIPMENT, ITS DURABILITY, ITS FITNESS FOR ANY PARTICULAR PURPOSE, ITS MERCHANTABILITY, ITS CONDITION, ITS CAPACITY, ITS OPERATION, ITS PERFORMANCE, ITS DESIGN, ITS MATERIALS, ITS WORKMANSHIP AND/OR ITS QUALITY. CREDITOR AND CREDITOR'S ASSIGNEE SHALL NOT BE LIABLE TO OBLIGOR OR ANY THIRD PARTY FOR ANY LOSS DAMAGE, INJURY OR EXPENSE OF ANY KIND OR NATURE CAUSED DIRECTLY OR INDIRECTLY BY ANY OF THE EQUIPMENT OR THEIR USE OR MAINTENANCE THEREOF OR ANY DEFECT THEREIN, THE FAILURE OF OPERATION THEREOF, OR ANY REPAIR, SERVICE OR ADJUSTMENT THERETO, OR BY ANY DELAY OR FAILURE TO PROVIDE ANY THEREOF OR BY ANY INTERRUPTION OR SERVICE OR LOSS OF USE THEREOF OR FOR ANY LOSS OF BUSINESS OR DAMAGE WHATSOEVER AND HOWSOEVER CAUSED, INCLUDING (WITHOUT LIMITATION) ANY LOSS OF ANTICIPATORY PROFITS OR ANY OTHER INDIRECT, SPECIAL OR CONSEQUENTIAL DAMAGES, NOR SHALL CREDITOR BE LIABLE FOR ANY DAMAGES WHICH MAY BE ASSESSED AGAINST OBLIGOR IN ANY ACTION FOR INFRINGEMENT OF ANY UNITED STATES PATENT, TRADEMARK OR COPYRIGHT. CREDITOR MAKES NO WARRANTY AS TO THE TREATMENT OF THIS AGREEMENT FOR TAX OR ACCOUNTING PURPOSES, OR AS TO THE COMPLIANCE OF THE EQUIPMENT WITH APPLICABLE GOVERNMENT REGULATIONS OR REQUIREMENTS, WHICH SHALL BE THE SOLE RESPONSIBILITY OF THE ABOVE-NAMED SELLER AND/OR MANUFACTURER OF THE EQUIPMENT. NO REPRESENTATION OR WARRANTY AS TO THE EQUIPMENT OR ANY OTHER MATTER BY SELLER SHALL BE BINDING ON CREDITOR NOR SHALL THE BREACH OF SUCH RELIEVE OBLIGOR OF, OR IN ANY WAY AFFECT, ANY OF OBLIGOR'S OBLIGATIONS TO CREDITOR OR CREDITOR'S ASSIGNEE AS SET FORTH HEREIN.** Obligor agrees to look solely to the manufacturer, the Seller named above or the carrier of the Equipment (which are solely responsible for supplying Obligor with all literature and manuals respecting the Equipment) for any claim arising from any defect, breach of warranty, failure or delay in delivery, misdelivery, installation or inability to use the Equipment for any reason whatsoever and Obligor's obligations to Creditor hereunder shall not in any manner be affected thereby, including (without limitations) Obligor's obligations to pay Creditor all periodic installments and other amounts payable under this Agreement.

6. Obligor shall accept the Equipment upon its delivery and authorizes Creditor to insert herein the serial numbers and any additional description of the items of Equipment so delivered. Unless Obligor gives Creditor and Seller written notice of each defect or other proper objection to any item of Equipment within five (5) days after delivery thereof, it shall be conclusively presumed that the Equipment was duly delivered and unconditionally accepted by Obligor. If Obligor wrongfully refuses delivery of any item of Equipment for any reason whatsoever, then and in that event, Obligor agrees to indemnify and hold Creditor harmless from and against, and agrees to protect and (at Creditor's option) to defend Creditor at Obligor's sole expense against (with counsel acceptable to Creditor), any claim or liability and damage by Seller with reference to such item of Equipment. Upon such payment, this Agreement shall terminate as to such item of Equipment only, and the periodic installment hereunder shall be proportionately adjusted.

7. Obligor shall keep the Equipment within the United States at the above-stated "Location of Equipment" or, if none is specified, at Obligor's above-stated address within the United States, and Obligor shall not remove any of the Equipment therefrom for more than thirty (30) days without Creditor's prior written consent.

8. Obligor shall use the Equipment in a careful manner and shall at all times, at its sole expense, keep the Equipment in good operating condition, repair and appearance and comply with all laws, ordinances, regulations or requirements of any governmental authority, official, board or department relating to its installation, possession, use or maintenance. Obligor shall not make any alterations, additions, or improvements to the Equipment which are not readily removable without causing damage to or reducing the value of the Equipment. Obligor agrees to cause the Equipment to be maintained by the above-named Seller pursuant to Seller's standard preventive maintenance contract or by a comparable maintenance contract issued by a maintenance provider acceptable to Creditor.

9. Upon Creditor's request, Obligor shall affix and keep in a prominent place on each item of Equipment such labels, plates and/or other markings indicating that the Equipment is financed by Creditor as Creditor shall specify. Creditor shall have the right during normal hours, upon reasonable prior notice to Obligor, to enter upon the premises where the Equipment is located in order to inspect, observe or remove the Equipment, or to otherwise protect Creditor's interest.

10. The Equipment shall be and remain personal property notwithstanding the manner in which it may be attached or affixed to realty. Obligor represents, warrants and covenants that, unless Obligor owns the premises in which the Equipment is to be located and such premises are not subject to any mortgage, Obligor shall provide Creditor, within ten (10) days following the execution by Obligor of this Agreement, with a waiver from each landlord and/or mortgagee of the premises in which the Equipment is to be located of any rights which such landlord and/or mortgagee may have in respect of any of the Equipment (including, but not limited to, claims against the Equipment by reason of accession or distraint, or that the Equipment constitutes a fixture affixed to real property) and to procure for Creditor, in form acceptable to Creditor, such documents with respect to such waiver as Creditor may reasonably request.

11. In addition, to the extent permitted by applicable law, Obligor also hereby waives any rights now or hereafter conferred by statute or otherwise which may require Creditor to sell, lease or otherwise use any Equipment in mitigation of Creditor's damages or which may otherwise limit or modify any of Creditor's rights or remedies.

12. Obligor shall bear the entire risk of loss, theft, destruction of or damage to the Equipment or any part thereof from any cause whatsoever during the term of this Agreement and shall not be relieved of its liabilities under paragraph 4 hereof or any other obligation hereunder because of any such occurrence. In the event of damage to any item of Equipment, Obligor, at its sole expense and at the option of Creditor, shall immediately place the same in good condition and repair. If Creditor determines that any item of Equipment is lost, stolen or destroyed or damaged beyond repair, Obligor, at its sole expense and at the option of Creditor, shall (a) replace the same with like equipment in good condition and repair, or (b) pay Creditor in cash (in addition to any other amount due hereunder) the unpaid balance of the total periodic installments for the unexpired term hereof attributable to such item of Equipment. Upon Creditor's receipt of such payment, Creditor's security interest in such item of Equipment shall cease.

13. Obligor shall, at its expense, keep the Equipment fully insured in favor of Creditor against loss, fire, theft, damage or destruction from any cause whatsoever in an amount not less than the greater of (a) the total periodic installments hereunder, or (b) the full replacement cost of the Equipment without consideration for depreciation. Obligor shall also provide such additional insurance against injury, loss or damage to persons or property arising out of the use or operation of the Equipment as is customarily maintained by the owners of like property, with companies satisfactory to Creditor. Each policy shall provide that, as to the interest or coverage of Creditor or Creditor's assignee, the insurance afforded thereby shall not be suspended, forfeited, or in any manner prejudiced by any default or by any breach of warranty condition, or covenant on the part of Obligor. Creditor, at its option, may apply any proceeds of such insurance to replace or repair such Equipment and/or to Obligor's obligations hereunder. If Obligor shall fail to provide any such insurance or, within ten (10) days after Creditor's request therefore, shall fail to deliver the policies or certificates thereof to Creditor, then Creditor, at its option, shall have the right to procure such insurance and to add the full cost thereof to the payment next becoming due, which Obligor agrees to pay. The amount of such insurance shall be sufficient so that neither Creditor nor Obligor will be considered a co-insurer. Obligor also shall carry public liability insurance, both personal injury and property damage covering the Equipment. All such insurance shall be in form, issued by such insurance companies and be in such amounts as shall be satisfactory to Creditor, and shall provide that losses, if any, shall be payable to Creditor and Creditor's assignee as "loss payee", and all such liability insurance shall include Creditor and Creditor's assignee as an "additional insured." Obligor shall pay the premiums for such insurance and deliver to Creditor satisfactory evidence of the insurance coverage required hereunder. Each insurer shall agree, by endorsement upon the policy or policies issued by it or by independent instrument furnished to Creditor, that it will give Creditor at least ten (10) days prior written notice of the effective date of any alternation or cancellation of such policy, and that Creditor's coverage under such policy shall not be affected by any default, misrepresentation or other breach by Creditor or Obligor under this Agreement or such policy. Obligor hereby irrevocably appoints Creditor as Obligor's attorney-in-fact to make claim for, receive payments on, and execute and endorse all documents, checks or drafts received in payment for loss or damage under any such insurance policy. In any event, Obligor shall be liable for any loss, damage, expense or costs suffered or incurred by Creditor relating to or in any manner pertaining to this Agreement, the Equipment or the use or operation of the Equipment.

14. Obligor covenants and agrees at all times to keep the Equipment free and clear of all levies, liens and encumbrances, and to pay all charges, taxes and fees that may now or hereafter be imposed upon the ownership, sale, purchase, possession or use of the Equipment (except taxes on or measured by Creditor's income) and shall give Creditor immediate written notice of any of the foregoing and hereby indemnifies Creditor against any loss caused thereby. If any of same shall remain unpaid when due, Creditor may pay same and add such payment to the payment next becoming due. Obligor shall execute and deliver to Creditor upon Creditor's request such further instruments, financing statements and documents containing such other assurances as Creditor deems necessary or advisable for the confirmation or perfection of Creditor's rights hereunder or to otherwise effectuate the intent of this Agreement.

15. Obligor shall and does hereby indemnify and save Creditor, its officers, employees, agents, servants, successors and assigns, harmless from any and all liabilities (including, without limitation, negligence, tort and strict liability), damages, expenses, claims, actions, proceedings, judgments, settlements, losses, liens and obligations (each, an "Indemnified Claim"), including (without limitation) counsel fees and costs, arising out of the ordering, purchase, delivery, rejection, non-delivery, ownership, selection, possession, financing, operation (regardless of where, how and by whom operated), control, use, condition (including but not limited to latent and other defects, whether or not discoverable by Obligor), maintenance, delivery, transportation, storage, repair, return or other disposition of the Equipment, any claims arising under federal, state or local environmental protection and hazardous substance clean up laws and regulations and any claims of patent, trademark or copyright infringement or, in the event that Obligor shall be in default hereunder, arising out of the condition of any item of Equipment sold or disposed of after use by Obligor, including (without limitation) claims for injury to or death of persons and for damage to property. The indemnities and obligations herein provided shall continue in full force and effect notwithstanding the expiration, termination or cancellation of this Agreement for any reason whatsoever and irrespective of whether Creditor ever accepts this Agreement. Obligor shall give Creditor prompt written notice of any Indemnified Claim and, at Creditor' sole option, shall defend Creditor against any Indemnified Claim at Obligor's sole expense with counsel selected by Creditor. Obligor is an independent contractor and nothing contained herein shall authorize Obligor or any other person to operate any item of Equipment so as to incur any liability or obligation for or on behalf of Creditor.

16. OBLIGOR SHALL NOT ASSIGN, PLEDGE, MORTGAGE OR OTHERWISE TRANSFER OR ENCUMBER ANY OF ITS RIGHTS UNDER THIS AGREEMENT OR IN THE EQUIPMENT OR ANY PART THEREOF, NOR SUBLET ANY PART THEREOF, NOR PERMIT ITS USE BY ANYONE OTHER THAN OBLIGOR AND ITS REGULAR EMPLOYEES, WITHOUT CREDITOR'S PRIOR WRITTEN CONSENT. ANY SUCH PURPORTED TRANSFER, ASSIGNMENT OR *OTHER ACTION WITHOUT CREDITOR'S WRITTEN CONSENT SHALL BE VOID.* Creditor may, without notice, transfer or assign this Agreement or any interest herein and may mortgage, pledge, encumber or transfer any of its right or interest in and to this Agreement and/or the Equipment or any part thereof and, without limitation, each assignee, transferee and mortgagee shall have the right to further transfer or assign its interest. Each such assignee, transferee, mortgagee and pledgee shall have all of the rights (but none of the obligations) of Creditor under this Agreement, and Obligor hereby acknowledges notice of Creditor's intended assignment of Creditor's interest in this Agreement and, upon such assignment, Obligor agrees not to assert against any of such transferee, assignee, mortgagee or pledgee any defense, claim, counterclaim or set-off that Obligor may have against Creditor, whether arising under this Agreement, transaction or otherwise. Any assignee of Creditor's rights under this Agreement shall be considered a third party beneficiary of all of Obligor's representations, warranties and obligations hereunder to Creditor. Obligor agrees that after receipt by Obligor of written notice of an assignment from Creditor or from Creditor's assignee, all periodic installments and other amounts which are then and thereafter due under this Agreement shall be paid unconditionally to such assignee at the place of payment designated in such notice. Obligor acknowledges that any assignment of Creditor's interest would neither materially change the Obligor's obligations hereunder nor materially increase the burden or risk imposed on the Obligor under this Agreement. Obligor further acknowledges that an assignment by the Creditor of its interest hereunder will be permitted even if the assignment would deem to materially affect the Obligor's interest.

17. As used in this Agreement, the term "Event of Default" shall mean any one or more of the following: (an) the failure by Obligor to make any payment when due hereunder or the failure by a Debtor (as hereinafter defined) to pay when due any of the Liabilities (as hereinafter defined); (b) the failure by a Debtor to observe or perform (i) any other agreement or obligation to be observed or performed hereunder or under any agreement, document or instrument delivered to Creditor by or on behalf of any Debtor or otherwise relating to any of the Liabilities (collectively, the "Other Documents"), or (ii) any other obligation of a Debtor to Creditor; (c) any representation or warranty made by or on behalf of any Debtor in this Agreement or in any of the Other Documents shall at any time prove to have been incorrect or untrue when made; (d) the making by a Debtor of any misrepresentation to Creditor or the failure on the part of a Debtor to disclose to Creditor any material fact in connection with this Agreement or otherwise, either contemporaneously herewith or at any time prior or subsequent to the execution hereof; (e) the breach by a Debtor of any warranty contained herein or in any of the Other Documents, including, without limitation, Obligor's failure to obtain or maintain any insurance required by Creditor hereunder; (f) an default in the payment of any indebtedness owed to any individual or entity other than Creditor, or an default in the performance or observance of the terms of any agreement, document or instrument pursuant to which such indebtedness was created, secured or guaranteed, the effect of which default is to cause or permit the holder of any such indebtedness to cause the same to be due prior to its stated maturity (whether or not such default is waived by the holder thereof); (g) the failure of a Debtor to pay, withhold, collect or remit when asserted or due any tax, assessment or other sum payable with respect to the Equipment or any security for any of the Liabilities (including, without limitation, any premium on any insurance policy with respect to any of the Equipment or any security for any of the Liabilities, or any insurance policy assigned to Creditor as security for any of the Liabilities), or the making of any tax assessment against any Debtor by the United States or any state or local government; (h) the entry of a judgment against a Debtor or any attachment, levy or execution against any property of a Debtor, or the condemnation or seizure of any part of any property

of a Debtor by any governmental authority or court at the insistence of such governmental authority; (i) the death of a Debtor, if an individual, or the death of any individual member of a Debtor, if a partnership or joint venture; (j) the change in control, management, ownership or operations of a Debtor, or the suspension of the usual business of a Debtor, or the dissolution, liquidation or other termination of existence of a Debtor, or the adoption of any resolution for the dissolution, liquidation or other termination of existence of a Debtor, or the sale of material assets of an Obligor; (k) the failure of a Debtor (or any admission in writing by a Debtor of its inability) to generally pay its debts as they become due or the insolvency or business failure of a Debtor; (l) the filing of an application for appointment of trustee, custodian or receiver for a Debtor or of any part of a Debtor's property, or an assignment for the benefit of creditors by a Debtor, or the making or sending of notice of any intended bulk transfer by a Debtor; (m) the filing of a petition in bankruptcy by or against a Debtor, or the commencement by or against a Debtor of any proceeding under any bankruptcy or insolvency law or statute, or any law or statute, relating to the relief of debtors or arrangement of debt, readjustment of indebtedness, reorganization, receivership or composition, or the extension of indebtedness; or (n) such a change in the condition or affairs (financial or otherwise) of a Debtor as shall, in the sole opinion of Creditor increase Creditor's risk with respect to this Agreement, the Equipment or any of the Liabilities or any security therefor. Upon the occurrence of an Event of Default, then, at Creditor's option, and at any time, the entire unpaid total periodic installments for the balance of the Entire Term (discounted to its present value at a discount rate of 6% as of the date of default) hereof shall be at once due and payable and/or Creditor may, without demand or legal process, terminate this Agreement and enter upon the premises where the Equipment is located, take possession of and remove same, and exercise any one or more of the following rights and remedies, without liability to Obligor therefor and without affecting Obligor's obligations hereunder: (i) sell, lease, or otherwise dispose of the Equipment or any part thereof at one or more public or private sales, agreements or other dispositions, at wholesale or retail, for such consideration, on such terms, for cash or on credit, as Creditor many deem advisable, on at least ten (10) days' prior notice to Obligor of any public sale or of the time after which private sale, agreement or other disposition may be made (which notice Obligor acknowledges is reasonable); and/or (ii) retain the Equipment or any part thereof, crediting Obligor with the then reasonable rental value thereof for the balance of the Entire Term of this Agreement, and/or (iii) require Obligor to assemble all Equipment at Obligor's sole expense, for Creditor's benefit, at a place reasonably designated by Creditor: and/or (iv) pursue any other remedy granted by any existing or future document executed by Obligor or by law. Obligor agrees to pay all Creditor's expenses, including (but not limited to) the costs of repossessing, storing, repairing and preparing Equipment for sale or agreement, commissions payable in connection with any such sale or agreement, and reasonable attorney's fees if an attorney shall be consulted. The net proceeds realized from any such sale, agreement or other disposition or the exercise of any other remedy, and all expenses (which amount shall be retained by Creditor), shall be applied toward payment of the discounted unpaid periodic installment payments hereunder through the end of the Entire Term of the Agreement, any other amounts due hereunder, with Obligor to remain liable for any deficiency. Any amount due Creditor under this paragraph 17 shall be deemed liquidated damages for the breach hereof and not a penalty. All rights and remedies of Creditor shall be cumulative and not alternative and are in addition to any other remedies provided by law. Creditor's failure to exercise or delay in exercising any right or remedy shall not be construed as a waiver thereof, nor shall a waiver on one occasion be construed to bar the exercise of any right or remedy on a future occasion.

For purposes of this Agreement, (a) the term "Debtor" shall mean Obligor and any guarantor, pledgor or hypothecator, and any other party liable for any of the Liabilities of Obligor in addition to Obligor and (b) the term "Liabilities" shall mean all liabilities and obligations of any kind of all Debtors (or any partnership, joint venture or other group of which an Debtor is a member) to Creditor whether (i) for the account of Creditor, or as agent for others, (ii) acquired directly or indirectly by Creditor from Obligor or otherwise, (iii) absolute or contingent, joint or several, secured or unsecured, liquidated or unliquidated, due or not due, contractual or tortuous or now existing or hereinafter arising, or (iv) incurred by any Debtor as principal, surety, endorser, guarantor or otherwise, and including without limitation all expenses and attorneys' fees, incurred by Creditor in connection with any such liabilities or obligations or any security therefor.

18. Whenever any periodic installment or other amount payable to Creditor by Obligor hereunder is not paid within ten (10) days of such payments due date, Obligor agrees to pay Creditor, on demand, as liquidated damages and not as a penalty; (a) with respect to payments, an administrative fee equal to five cents ($.05) for each one dollar ($1.00) of such delayed periodic payment, or the maximum amount permitted under applicable law, whichever is less, and (b) with respect to periodic payments overdue for more than thirty (30) days and all other amounts payable to Creditor by Obligor hereunder (including accelerated amounts due if Obligor is in default), a late charge calculated at the rate of 18% per annum on such overdue amount, or the maximum amount permitted under applicable law, whichever, is less, from the date such payment is due until the date such payment is made in full to Creditor. Such amount(s) shall be payable in addition to all amounts payable by Obligor as a result of exercise of any of the remedies herein provided. Obligor agrees to also reimburse Creditor for any expenses (including Creditor's attorneys' fees and costs) arising out of or caused by enforcement of this Agreement.

19. Obligor agrees that this Agreement is irrevocable for the Entire Term, that Obligor's obligations under this Agreement are absolute and unconditional and shall continue without abatement and regardless of any disability of Obligor to use the Equipment or any part thereof because of any reason including, but not limited to war, act of God, governmental regulations, strike, loss, damage, destruction, obsolescence, failure of or delay in delivery, failure of the Equipment to operate properly, termination by operation of law or any other cause. Obligor further agrees that it shall have no right to prepay its obligations hereunder, in whole or in part, and hereby unconditionally waives any right of prepayment it may have under applicable law. Obligor warrants that the application, statements and credit or financial information submitted by it to Creditor are true and correct and made to induce Creditor to enter into this Agreement and to finance Obligor's purchase of the Equipment from Seller. Obligor agrees to provide to Creditor audited annual financial statements and such other interim financial statements as Creditor may request. Obligor warrants that this Agreement has been duly authorized, executed and delivered by Obligor, and constitutes the legal, valid and binding obligation of Obligor, enforceable in accordance with its terms, and that no provision of this Agreement is inconsistent with Obligor's charter, by-laws, or any loan or credit agreement or other instrument to which Obligor is a party or by which Obligor or its property may be bound or affected or conflict with any applicable law, rule or regulation, and no claim, action or suit is pending or has been threatened that would adversely affect Obligor's ability to enter into or perform its obligations under this Agreement. Obligor shall not change its name or its address without providing Creditor with at least thirty (30) days prior written notice thereof.

20. Obligor agrees that upon expiration of this Agreement it shall pay promptly all costs, expenses and obligations of every kind and nature relating to the Equipment which may arise or become due during the term of this Agreement, whether or not specifically mentioned herein. No periodic installment or other sums payable by Obligor pursuant to this Agreement shall be subject to set-off, deduction, counterclaim, abatement, recoupment, or reduction, nor shall this Agreement terminate, nor shall Obligor be entitled to any credit against such periodic installment or other sums for any reason whatsoever, including, but not in any way limited to, any damage to or destruction of the Equipment or any item thereof, any limitation, restriction, deprivation or prevention of, or any interference with Obligor's use of the Equipment or any item thereof, whether the sale shall be lawful or unlawful, any dispossession of Obligor from the Equipment or any item thereof by title paramount or otherwise, the requisition or taking by statute or by exercise of the power of eminent domain or other governmental authority or otherwise, or by injunction or by any private person, of the Equipment or any item thereof, the prohibition of Obligor's business in whole or in part, whether pursuant to law or otherwise or any reason whether similar or dissimilar to the foregoing.

21. OBLIGOR HEREBY AGREES THAT ALL ACTIONS OR PROCEEDINGS ARISING DIRECTLY OR INDIRECTLY FROM OR IN CONNECTION WITH THIS AGREEMENT SHALL BE LITIGATED ONLY IN THE STATE AND COUNTY OF CREDITOR'S PRINCIPAL PLACE OF BUSINESS OR SUCH OTHER FORUM AS CREDITOR SHALL ELECT. Obligor consents to the jurisdiction and venue of the foregoing courts and consents that any process or notice of motion or other application to either of such courts or a judge thereof may be served inside or outside the state of Creditor's principal place of business by registered or certified mail, return receipt requested, directed to Obligor at its address set forth in this Agreement (and service so made shall be deemed complete five (5) days after the same has been posted as aforesaid) or by the personal service, or in such other manner as may be permissible under the rules of such courts. Obligor appoints each and every officer of Creditor as agent for the purpose of accepting service off any process within the state of Creditor's principal place of business, subject only to the condition that the officer promptly mail a copy of that process to Obligor at its address for notices hereunder.

22. EACH OF THE PARTIES HEREBY UNCONDITIONALLY WAIVES ITS RIGHTS TO A JURY TRIAL OF ANY CLAIM OR CAUSE OF ACTION BASED UPON OR ARISING OUT OF, DIRECTLY OR INDIRECTLY, THIS AGREEMENT, ANY RELATED DOCUMENTS, ANY DEALINGS BETWEEN OBLIGOR AND CREDITOR RELATING TO THE SUBJECT MATTER OF THIS TRANSACTION OR ANY RELATED TRANSACTIONS, AND/OR THE RELATIONSHIP THAT IS BEING ESTABLISHED BETWEEN OBLIGOR AND CREDITOR. THE SCOPE OF THIS WAIVER IS INTENDED TO BE ALL ENCOMPASSING OF ANY AND ALL DISPUTES THAT MAY BE FILED IN ANY COURT (INCLUDING, WITHOUT LIMITATION, CONTRACT CLAIMS, TORT CLAIMS, BREACH OF DUTY CLAIMS, AND ALL OTHER COMMON LAW AND STATUTORY CLAIMS). THIS WAIVER IS IRREVOCABLE, MEANING THAT IT MAY NOT BE MODIFIED EITHER ORALLY OR IN WRITING, AND THE WAIVER SHALL APPLY TO ANY SUBSEQUENT AMENDMENTS, RENEWALS, SUPPLEMENTS OR MODIFICATIONS TO THIS AGREEMENT, OR TO ANY OTHER DOCUMENTS OR AGREEMENTS RELATING TO THIS TRANSACTION OR ANY RELATED TRANSACTION. IN THE EVENT OF LITIGATION, THIS AGREEMENT MAY BE FILED AS A WRITTEN CONSENT TO A TRIAL BY THE COURT.

23. Any notice to a party hereunder shall be deemed given when mailed to said party by certified mail, return receipt requested at its address set forth herein or such other address as either may designate for itself in such notice to the other. Whenever the sense of this Agreement requires, words in the singular shall be deemed to include the plural and words in the plural shall be deemed to include the singular. If more than one Obligor is named herein the liability of each

shall be joint and several. This Agreement (along with any separate promissory note or instrument executed by Obligor relating to this Agreement) constitutes the entire mutual understanding of the parties regarding the within subject matter and may not be modified except in writing, signed by the party against whom such modification is asserted. Upon the request of Creditor, Obligor shall at any time and from time to time after the execution and delivery of the Agreement, execute and deliver such further documents and do such further acts as Creditor may reasonably request in order fully to effect the purposes of this Agreement, and any assignment hereof. Obligor hereby authorizes Creditor, at its option and as contemplated by Section 9-408 of the UCC or otherwise, to file financing statements covering the Equipment signed only by Creditor on a reproduction of this Agreement, and agrees to pay Creditor the actual fee for such filing, recording or stamp fees or taxes arising from the filing or recording of any such instrument or statement. IN THE EVENT THE INTEREST RATE CHARGED UNDER THIS AGREEMENT EXCEEDS THE MAXIMUM RATE OF INTEREST ALLOWED BY APPLICABLE LAW, THEN THE EFFECTIVE RATE OF INTEREST HEREUNDER SHALL BE AUTOMATICALLY REDUCED TO THE MAXIMUM LAWFUL RATE ALLOWABLE UNDER THE APPLICABLE USURY LAWS.

24. THIS AGREEMENT SHALL BE CONSTRUED UNDER THE LAWS OF THE STATE OF CREDITOR'S PRINCIPAL PLACE OF BUSINESS, WITHOUT REGARD TO PRINCIPLES OF CONFLICT OF LAW OR CHOICE OF LAW. This Agreement shall not become effective until accepted by Creditor at its above-described office, and upon such acceptance shall, subject to paragraph 16 hereof, inure to and bind the parties, their successors, legal representatives and assigns. No provision hereof that may be construed as unenforceable shall in any way invalidate any other provision hereof, all of which shall remain in full force and effect. All representations, warranties, indemnities and agreements of Obligor contained in this Agreement shall survive and continue in full force and effect notwithstanding termination or expiration of this Agreement.

---

No agent or employee of Seller is authorized to bind Creditor to this Agreement, to alter or waive any term or condition hereof, or to add any provision hereto, notwithstanding any compensation or benefit that may be given by Creditor to Seller or any agent or employee of Seller. **THE UNDERSIGNED AGREE TO ALL TERMS AND CONDITIONS SET FORTH ABOVE AND IN WITNESS THEREOF HEREBY EXECUTE THIS AGREEMENT.**

**CREDITOR: LIBERTY CAPITAL GROUP, INC. which will do business in California as NJ Liberty Capital Group**

By: ______________________

Accepted at its office listed above: 5-18-16
Date

**OBLIGOR: A LOT TO SAY, INC.**

The undersigned warrants that he is a duly authorized corporate officer, partner or proprietor of the above named Obligor.

By: ______________________
Name: JENNIFER STANICH-BANMILLER
Title: President

**CERTIFICATE OF AUTHORITY FOR CHATTEL MORTGAGES**

**L-16129**

I certify to **Liberty Capital Group, Inc. which will do business in California as NJ Liberty Capital Group,** that the following resolutions were duly adopted by the Board of Directors of **A LOT TO SAY, INC.** a Corporation existing under the laws of **California** at a meeting duly held on ______________________ at which meeting a quorum was present and acting throughout, that the same have not been modified or rescinded and are not in conflict with any provision of the certificate of incorporation, by-laws or any agreement of said Corporation.

"RESOLVED, that the borrowing of this Corporation from **Liberty Capital Group, Inc. which will do business in California as NJ Liberty Capital Group** ("Creditor") of funds to finance the purchase of certain equipment which has been or will be purchased by this Corporation and the granting of a security interest to Creditor in such equipment is hereby approved, and any officer of this Corporation is authorized, in the name and on behalf of this Corporation to execute and deliver to Creditor a Chattel Mortgage covering such equipment, containing such terms and provisions as may be approved by the officer executing the same, his execution thereof to be deemed conclusive evidence of such approval, and any officer of this Corporation is also authorized, in the name and on behalf of this Corporation, to execute and deliver such other documents and to take such other action as may be deemed necessary or advisable to effectuate and perform such Chattel Mortgage."

I further certify that the persons listed below are the officers of said Corporation, the respective offices held by them and specimens of their genuine signatures:

| Name | Title | Specimen Signature |
|---|---|---|
| JENNIFER STANICH-BANMILLER | President & Secretary | [signature] |

Signed and sealed this 18th day of May, 2016
(CORPORATE SEAL)

[signature]
Secretary

If the Secretary executing this Certificate is a signatory on any of the documents referred to above, another officer must countersign below to verify the authority of the Secretary to execute said documents on behalf of this corporation.

______________________________
Officer's Countersignature

______________________________
Title

**SOLE OFFICER'S CERTIFICATE**
**L-16129**

I, **JENNIFER STANICH-BANMILLER,** do hereby certify that I am the sole officer of **A LOT TO SAY, INC.,** a **California** corporation, and am duly authorized as such to execute guaranty(s), loans of personal property, equipment, fixtures and leasehold improvements and all documents relating thereto on behalf of said corporation.

Signed and certified this 18th day of May, 2016

By: ______________________
JENNIFER STANICH-BANMILLER

# EXHIBIT 2

**PERSONAL GUARANTY**
**L-16129**

Guaranty made and delivered May 18, 2016 by the undersigned parties hereto, herein called "Guarantor", to **Liberty Capital Group, Inc. which will do business in California as NJ Liberty Capital Group** (herein called "Creditor"), on behalf of **A LOT TO SAY, INC.** (herein called "Debtor").

In order to induce Creditor to grant to Debtor such credit (which term shall include loans or leases to Debtor) all of which is to the economic benefit or advantage of Guarantor, at such time, in such amounts, on such terms, and with or without security, as Creditor may in its discretion see fit, without notice to or consent from Guarantor, and in consideration thereof, Guarantor hereby unconditionally, absolutely and irrevocably guarantees that irrespective of the genuineness, validity or enforceability of any document relating to such credit or of Debtor's obligations in respect thereof, whether now or existing hereafter arising (herein called "Liabilities") and of the existence, validity or value of any security, Debtor will promptly and fully pay and perform all obligations with respect to the Liabilities of any security therefor, with interest and other charges, when due (whether at maturity or earlier by acceleration or otherwise). Guarantor consents that from time to time, without notice to or further consent from Guarantor and without releasing or affecting its liability hereunder, the time for payment or performance may be extended or accelerated in whole or in part, any security may be exchanged, released, enforced, sold, leased or otherwise dealt with without notice to or further consent from Guarantor and without releasing or affecting his liability hereunder, any security may be exchanged, released, enforced, sold, leased or otherwise dealt with, the provisions of any documents may be canceled, compromised, modified or waived, any other Guarantor or surety may be released, and any indulgence may be granted Debtor, as Creditor may in its discretion determine. Guarantor waives and consents to the non-perfection, lapse or disposition of or other dealing with any security interest or liens at any time granted to Creditor as security for any of the Liabilities. No payments by Guarantor except payment in full of the Liabilities shall entitle Guarantor to be subrogated to any of the right of Creditor, other than as waived in the next paragraph below. Guarantor shall have no right or reimbursement or indemnity whatsoever and no right of recourse to or with respect to any assets or property of Debtor or to any security for the Liabilities unless and until the Liabilities have been paid in full, other than as waived in the next paragraph below.

Guarantor hereby unconditionally and irrevocably waives and releases any and all claims against Debtor now or hereafter arising out of or related directly or indirectly to any of the obligations of Guarantor under this Guaranty or any liabilities of Debtor to Creditor, including (without limitation) any and all such claims arising from rights of subrogation, indemnity, reimbursement, contribution or set-off of Guarantor against Debtor, whether arising by contract or otherwise.

If any payment received by Creditor from any source on account of the Liabilities is set aside or required to be repaid, whether in any bankruptcy proceeding or otherwise, this Guaranty shall remain in full force and effect (or be reinstated) until Creditor has received an retained full payment of all the Liabilities; and Guarantor agrees to pay any such amount upon demand. Guarantor agrees that it will not transfer any personal assets to any party (except gifts of nominal value) without full and valuable consideration for such transfer. If Debtor or Guarantor shall at any time become insolvent or make a general assignment or if a petition in bankruptcy or any insolvency or reorganization proceeding shall be commenced by, against or in respect of Guarantor or Debtor, any or all of Guarantor's obligations in respect of the Liabilities shall, at the sole option of Creditor, forthwith become due and payable without notice. Guarantor agrees that Creditor may enforce the Liabilities without resorting first to any other right, remedy or security and the Liabilities shall, unless paid in full, survive any repossession of any security, whether or not such action constitutes an election of remedies against Debtor. This Guaranty cannot be terminated or changed orally and no provision hereof may be modified or waived except in writing by Creditor; it shall continue in effect until Creditor receives written notice of termination, which shall not release or affect Guarantor's liability with respect to Liabilities theretofore created and any

extensions and consolidations thereof; and it is a guaranty of payment and not one of collection. This Guaranty shall be binding upon Guarantor, jointly and severally if more than one, and its or his respective heirs, representatives, successors and assigns in favor of Creditor, its successors and assigns. **GUARANTOR HEREBY WAIVES: PRESENTMENT, NOTICE OF DISHONOR AND PROTECT, NOTICE OF DEFAULT BY DEBTOR, OF SALE OR OTHER DEALING WITH ANY SECURITY AND ANY OTHER NOTICE TO WHICH GUARANTOR MIGHT OTHERWISE BE ENTITLED, JURY TRIAL, THE RIGHT TO INTERPOSE ANY COUNTERCLAIM OR CONSOLIDATE ANY OTHER ACTION WITH AN ACTION ON THIS GUARANTY, AND THE BENEFIT OF ANY STATUTE OF LIMITATIONS AFFECTING ITS LIABILITIES HEREUNDER OR THE ENFORCEMENT HEREOF.**

**GUARANTOR HEREBY SUBMITS TO THE JURISDICTION AND VENUE OF THE FEDERAL AND STATE COURTS IN THE STATE AND COUNTY OF CREDITOR'S PRINCIPAL PLACE OF BUSINESS LISTED ABOVE, IN ANY ACTION OR PROCEEDING BROUGHT UNDER THIS GUARANTY (IF CREDITOR CHOOSES TO BRING ANY SUCH ACTION OR PROCEEDING IN SUCH JURISDICTION AND VENUE), GUARANTOR AGREES THAT ANY PROCESS, NOTICE OF MOTION OR OTHER APPLICATION TO ANY OF SAID COURTS (OR A JUDGE THEREOF) IN ANY SUCH ACTION OR PROCEEDING SHALL BE SUFFICIENTLY SERVED IF SENT TO GUARANTOR BY CERTIFIED MAIL, RETURN RECEIPT REQUESTED, TO THE ADDRESS SET FORTH BELOW (AND SERVICE SO MADE SHALL BE DEEMED COMPLETE FIVE (5) DAYS AFTER THE SAME HAS BEEN POSTED AS AFORESAID).**

**THIS GUARANTY SHALL BE GOVERNED BY THE LAWS OF THE STATE OF CREDITOR'S PRINCIPAL PLACE OF BUSINESS LISTED ABOVE, WITHOUT REGARD TO PRINCIPLES OR CONFLICTS OF LAW OR CHOICE OF LAW.**

This Guaranty has been duly executed by Guarantor on the date set forth above.

Dated: 5/18, 2016

**JENNIFER STANICH-BANMILLER**
(Name of Guarantor)

[signature]
(Signature of Guarantor)

**4478 Deer Ridge Road, Danville, CA 94506**
(Address of Guarantor)

[redacted]
(Social Security Number)

[redacted]
(Home Telephone Number)

**Witness:** Korin Harvey

**Print Name:** Korin Harvey

# EXHIBIT 3

**Exhibit C - Loan**

NOTICE OF ACKNOWLEDGEMENT OF ASSIGNMENT OF LOAN

Date: 5-18-16

Borrower: A LOT TO SAY, INC.

Address: 4165 Blackhawk Plaza Circle, Suite 110

City, State, Zip: Danville, CA, 94506

---

Borrower:

Reference is made to CHATTEL MORTGAGE dated ____________ ("Note") (inclusive of all schedules thereto – together with the Note collectively the "Loan Documents") between A LOT TO SAY, INC. as borrower ("Borrower") and LIBERTY CAPITAL GROUP, INC. WHICH WILL DO BUSINESS IN CALIFORNIA AS NJ LIBERTY CAPITAL GROUP as lender/secured party (collectively "Lender").

For the purposes of this Notice of Acknowledgment and Assignment, the monies due under the Loan Documents shall sometimes be referred to as the "Payments"; and the personal property pledged to the Lender under the Loan Documents shall sometimes be referred to as "Collateral".

Please be advised that all and/or a portion of the Loan Documents have been sold and assigned to Signature Financial and Leasing LLC ("SFLLC") as of the Assignment Date set forth below. Those Payments assigned to SFLLC (the "Assigned Payments") are also set forth below. In furtherance thereto, you are hereby notified and directed to remit all Assigned Payments due and payable under the Loan Documents to SFLLC as follows:

Signature Financial and Leasing LLC
225 Broad Hollow Road, 1st Floor
Melville, NY 11747

Assigned Payments should be made directly to SFLLC or to such other location as SFLLC may designate until you are advised otherwise in writing by SFLLC. Please cause SFLLC to be listed as an additional insured and a loss payee (as applicable) on the insurance policies required under the Loan Documents and send a certificate evidencing the same to them at Signature Financial and Leasing LLC, 225 Broad Hollow Road, 1st Floor, Melville, NY 11747. Please execute this letter in the space provided below and return it directly to SFLLC. By executing this letter below, you acknowledge that Borrower will make the Assigned Payments in accordance with the Loan Documents, without claim, demand, offset, or defense of any kind whatsoever; that the Loan Documents are in full force and effect and have not been amended, modified or altered and no default(s) have occurred and are continuing thereunder; that Borrower has no claims, offsets, demands or defenses of any kind, nature or description with reference to any of the Lender's obligations under the Loan Documents; and that Borrower will send all notices under the Loan Documents to, and obtain any relevant consents from, SFLLC (with a copy to Lender).

Your execution of this letter also confirms the following to SFLLC: (i) the Loan Documents have been duly authorized, executed and delivered by Borrower; (ii) the Loan Documents are in full force and effect and are legal, valid, binding and enforceable against Borrower; (iii) the Borrower is not in default under the Loan Documents as of the date hereof; (iv) that only the copy of the Note containing the Borrower's original signature is chattel paper for purposes of transferring and/or perfecting an interest in the Loan Documents and that any other copy of the Loan Documents are not the "original" for such purposes; (v) SFLLC is not responsible for the performance of any Lender covenant or agreement under the Loan Documents (except that SFLLC agrees it will not interfere with Borrower's quiet enjoyment of the Collateral so long as Borrower is not in default); (vi) upon Borrower's default, breach or failure to comply with its obligations under the Loan Documents including but not limited to the failure of Borrower to make any and all Assigned Payments required thereunder, SFLLC may avail itself of any or all of the remedies provided for in the Loan Documents and under applicable law; and (vii) there are no other agreements, amendments, riders or other writings which would modify any of the terms of the Loan Documents.

Upon, and as of the Assignment Date below, and as an inducement to SFLLC to enter into the Assignment, Borrower and Lender agree that the following terms of the Loan Documents are accurate:

PARTICULARS OF THE LOAN DOCUMENTS

| | |
|---|---|
| Collateral: | See attached Schedule |
| Payments under the Loan Documents: (including those not assigned, if any) | Payments 1-3 @ $500.00, 4-63 @ $6,839.00 payable in advance, beginning on ___________ and payable each and every month thereafter for 63 months plus all other sums due or to become due under the Loan Documents. |
| Assigned Payments: | Payment 1-2 @ $500.00, 3-61 @ $6,839.00 per month payable in arrears, beginning on _________ and payable each and every month thereafter for 61 months, plus all other sums due or to become due under the Loan Documents. |
| Assignment Date: | |

This letter may be executed in counterparts, which together shall constitute one and the same instrument. Copies of signatures on this Notice which were provided to SFLLC by facsimile, email or other electronic means shall be deemed original signatures.

Very truly yours,

| LIBERTY CAPITAL GROUP, INC. WHICH WILL DO BUSINESS IN CALIFORNIA AS NJ LIBERTY CAPITAL GROUP (Lender) | ACCEPTED AND CONFIRMED: A LOTTO SAY, INC. (Borrower) |
|---|---|
| By: [signature] | By: [signature] |
| Name: ANTHONY MARTINO | Name: JENNIFER STANICH-BANMILLER |
| Title: PRESIDENT | Title: President |

310040v1

# EXHIBIT 4

Date of Chattel Mortgage: 5-18-16

L-16129

Creditor: Liberty Capital Group, Inc. which will do business in California as NJ Liberty Capital Group
45 Carey Avenue, Suite 200
Butler, NJ 07405

**DELIVERY & ACCEPTANCE OF EQUIPMENT BY OBLIGOR**

The undersigned Obligor acknowledges that the Equipment described in the Chattel Mortgage accepted by the above-named Creditor on the date indicated above has been received in good repair, has been properly installed, tested and inspected and is operating satisfactorily in all respects for all of Obligor's intended uses and purposes at the location(s) specified in the Chattel Mortgage. OBLIGOR HEREBY ACCEPTS UNCONDITIONALLY AND IRREVOCABLY THE EQUIPMENT.

By signature below, Obligor specifically authorizes and requests Creditor and/or its Assignee to make payment to the seller of the Equipment. Obligor agrees that said Equipment has not been delivered, installed or accepted on a trial basis.

WITH THE DELIVERY OF THIS DOCUMENT TO CREDITOR, OBLIGOR ACKNOWLEDGES AND AGREES THAT OBLIGOR'S OBLIGATIONS TO CREDITOR AND ITS ASSIGNEE BECOME ABSOLUTE AND IRREVOCABLE AND OBLIGOR SHALL BE FOREVER ESTOPPED FROM DENYING THE TRUTHFULNESS OF THE REPRESENTATIONS MADE IN THIS DOCUMENT. OBLIGOR AFFIRMS THAT IT HAS NO DEFENSES OR COUNTERCLAIMS AGAINST CREDITOR AND IF THE CHATTEL MORTGAGE OR THE SCHEDULE IS ASSIGNED BY CREDITOR, OBLIGOR WILL NOT ASSERT AGAINST THE ASSIGNEE ANY DEFENSE, CLAIM, SETOFF OR COUNTERCLAIM WHICH OBLIGOR MAY HAVE AGAINST CREDITOR.

**Equipment Location: 4155 BALACKHAWK Plaza Circle, Suite 110, Danville, CA 94506**

Date of Acceptance: 8-26-16

Obligor: A LOT TO SAY, INC.

(Full name of individual, partnership or corporation)

The undersigned warrants that he is a duly authorized corporate officer, partner of the above-named Obligor.

By: [signature]
Name: JENNIFER STANICH-BANMILLER
Title: President

**IMPORTANT: THIS DOCUMENT HAS LEGAL AND FINANCIAL CONSEQUENCES TO YOU. DO NOT SIGN THIS DOCUMENT UNTIL YOU HAVE ACTUALLY RECEIVED ALL OF THE EQUIPMENT AND ARE COMPLETELY SATISFIED WITH IT.**

# EXHIBIT 5

[redacted]

# UCC FINANCING STATEMENT AMENDMENT

FOLLOW INSTRUCTIONS

A. NAME & PHONE OF CONTACT AT FILER (optional)
Phone: (800) 331-3282 Fax: (818) 662-4141

B. E-MAIL CONTACT AT FILER (optional)
CLS-CTLS_Glendale_Customer_Service@wolterskluwer.com

C. SEND ACKNOWLEDGMENT TO: (Name and Address) 22579 - LIBERTY

CT Lien Solutions
P.O. Box 29071
Glendale, CA 91209-9071

55425842
CALI

File with: Secretary of State, CA

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

1a. INITIAL FINANCING STATEMENT FILE NUMBER
167525896786 5/18/2016 SS CA

1b. ☐ This FINANCING STATEMENT AMENDMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS
Filer: attach Amendment Addendum (Form UCC3Ad) and provide Debtor's name in item 13

2. ☐ TERMINATION: Effectiveness of the Financing Statement identified above is terminated with respect to the security interest(s) of Secured Party authorizing this Termination Statement

3. ☒ ASSIGNMENT (full or partial): Provide name of Assignee in item 7a or 7b, and address of Assignee in item 7c and name of Assignor in item 9
For partial assignment, complete items 7 and 9 and also indicate affected collateral in item 8

4. ☐ CONTINUATION: Effectiveness of the Financing Statement identified above with respect to the security interest(s) of Secured Party authorizing this Continuation Statement is continued for the additional period provided by applicable law

5. ☐ PARTY INFORMATION CHANGE:

Check one of these two boxes:
This Change affects ☐ Debtor or ☐ Secured Party of record

AND Check one of these three boxes to:
☐ CHANGE name and/or address: Complete item 6a or 6b; and item 7a or 7b and item 7c
☐ ADD name: Complete item 7a or 7b, and item 7c
☐ DELETE name: Give record name to be deleted in item 6a or 6b

6. CURRENT RECORD INFORMATION: Complete for Party Information Change - provide only one name (6a or 6b)

6a. ORGANIZATION'S NAME

OR

| 6b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|
| | | | |

7. CHANGED OR ADDED INFORMATION: Complete for Assignment or Party Information Change - provide only one name (7a or 7b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name)

7a. ORGANIZATION'S NAME
SIGNATURE FINANCIAL AND LEASING LLC

OR

7b. INDIVIDUAL'S SURNAME

INDIVIDUAL'S FIRST PERSONAL NAME

INDIVIDUAL'S ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX

| 7c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 225 BROAD HOLLOW ROAD, 1ST FL | MELVILLE | NY | 11747 | USA |

8. ☐ COLLATERAL CHANGE: Also check one of these four boxes: ☐ ADD collateral ☐ DELETE collateral ☐ RESTATE covered collateral ☐ ASSIGN collateral

Indicate collateral:

9. NAME OF SECURED PARTY OF RECORD AUTHORIZING THIS AMENDMENT: Provide only one name (9a or 9b) (name of Assignor, if this is an Assignment)
If this is an Amendment authorized by a DEBTOR, check here ☐ and provide name of authorizing Debtor

9a. ORGANIZATION'S NAME
LIBERTY CAPITAL GROUP, INC. WHICH WILL DO BUSINESS IN CALIFORNIA AS NJ LIBERTY CAPITAL GROUP

OR

| 9b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|
| | | | |

10. OPTIONAL FILER REFERENCE DATA: Debtor Name: A LOT TO SAY, INC.
55425842 L-16129



Prepared by CT Lien Solutions, P.O. Box 29071, Glendale, CA 91209-9071 Tel (800) 331-3282

[redacted]

## UCC FINANCING STATEMENT

FOLLOW INSTRUCTIONS

A. NAME & PHONE OF CONTACT AT FILER (optional)
Phone: (800) 331-3282 Fax: (818) 662-4141

B. E-MAIL CONTACT AT FILER (optional)
CLS-CTLS_Glendale_Customer_Service@wolterskluwer.com

C. SEND ACKNOWLEDGMENT TO: (Name and Address) 22579 - LIBERTY

CT Lien Solutions
P.O. Box 29071
Glendale, CA 91209-9071

54006607
CALI

File with: Secretary of State, CA

CT Lien Solutions
Representation of filing

**This filing is Completed**
File Number : 167525896786
File Date : 18-May-2016

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

1. DEBTOR'S NAME: Provide only one Debtor name (1a or 1b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 1b, leave all of item 1 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

1a. ORGANIZATION'S NAME: A LOT TO SAY, INC.

OR

| 1b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | | SUFFIX |
|---|---|---|---|---|
| | | | | |
| **1c. MAILING ADDRESS** | **CITY** | **STATE** | **POSTAL CODE** | **COUNTRY** |
| 4155 BLACKHAWK PLAZA CIRCLE, SUITE 110 | DANVILLE | CA | 94506 | USA |

2. DEBTOR'S NAME: Provide only one Debtor name (2a or 2b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 2b, leave all of item 2 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

2a. ORGANIZATION'S NAME:

OR

| 2b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | | SUFFIX |
|---|---|---|---|---|
| | | | | |
| **2c. MAILING ADDRESS** | **CITY** | **STATE** | **POSTAL CODE** | **COUNTRY** |
| | | | | |

3. SECURED PARTY'S NAME (or NAME of ASSIGNEE of ASSIGNOR SECURED PARTY): Provide only one Secured Party name (3a or 3b)

3a. ORGANIZATION'S NAME: LIBERTY CAPITAL GROUP, INC. WHICH WILL DO BUSINESS IN CALIFORNIA AS NJ LIBERTY CAPITAL GROUP

OR

| 3b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | | SUFFIX |
|---|---|---|---|---|
| | | | | |
| **3c. MAILING ADDRESS** | **CITY** | **STATE** | **POSTAL CODE** | **COUNTRY** |
| 45 CAREY AVENUE, SUITE 200 | BUTLER | NJ | 07405 | USA |

4. COLLATERAL: This financing statement covers the following collateral:
ONE (1) EFI VUTEK GS3250LX PROPRINTER WITH ULTRADROP TECHNOLOGY SERIAL NUMBER ________, COMPLETE WITH ALL STANDARD AND ACCESSORY EQUIPMENT.

5. Check only if applicable and check only one box: Collateral is ☐ held in a Trust (see UCC1Ad, item 17 and Instructions) ☐ being administered by a Decedent's Personal Representative

6a. Check only if applicable and check only one box:
☐ Public-Finance Transaction ☐ Manufactured-Home Transaction ☐ A Debtor is a Transmitting Utility

6b. Check only if applicable and check only one box:
☐ Agricultural Lien ☐ Non-UCC Filing

7. ALTERNATIVE DESIGNATION (if applicable): ☐ Lessee/Lessor ☐ Consignee/Consignor ☐ Seller/Buyer ☐ Bailee/Bailor ☐ Licensee/Licensor

8. OPTIONAL FILER REFERENCE DATA:
54006607 L-16129

FILING OFFICE COPY — UCC FINANCING STATEMENT (Form UCC1) (Rev. 04/20/11)

Prepared by CT Lien Solutions, P.O. Box 29071, Glendale, CA 91209-9071 Tel (800) 331-3282